Isidra González-Ramos, Plaintiff and Appellant, *v.* Juana and Luis Magín González-Ramos, Defendants and Appellees.

No. 3783. Argued January 29, 1926.—Decided July 12, 1926.

*C. Domínguez Rubio* for the appellant. *R. V. Pérez Marchand* for the appellees.

Mr. Justice Franco Soto delivered the opinion of the court.

The opinion of the lower court in support of its judgment for the defendants reads as follows:

"José María González and Gregoria Ramos Fonseca lived in concubinage until June 29, 1902, when they contracted civil marriage in the municipality of Arroyo.

"Prior to their marriage several children were born to them, including the parties to this action.

"Isidra González Ramos alleges in her complaint that she is an acknowledged natural daughter of the González Ramos spouses; that she was legitimated by their marriage; that although her birth was not recorded in the civil register, she was acknowledged by her parents when she was baptized, they being married civilly in accordance with the general law of 1899; that no mention was made in their marriage certificate of their children born prior thereto because that was not required by the said law; that thereafter the plaintiff brought a proceeding in the District Court of Guayama in order to secure her registration in the civil register as a legitimated daughter of her parents, recovering judgment ordering such reg-

istration which was properly performed; that on the date of her registration as well as on the dates of the births of the defendants and the plaintiff there was no physical or legal impediment to the marriage of her parents, and that the defendants and especially the plaintiff were publicly and privately acknowledged as such children of their said parents both before and after their marriage.

"That José María González died on November 20, 1902, leaving a holographic will in which he mentioned as his children defendant Juana González and Julio or Guillermo whose death preceded that of the father. No mention was made therein of defendant Luis.

"That in a partition of the property left by José María González the plaintiff was not included as an heir although the other heirs knew that she was living with her mother and was one of the lawful heirs of José María González.

"After describing the property included in the partition the court is prayed to adjudge that the plaintiff is an acknowledged natural daughter of the González Ramos spouses, legitimated by the subsequent marriage of her parents, and therefore an heir of José María González; to declare void the partition of the said property, and to adjudge her to be the owner of a portion equal to one-third of the property taken by the defendants, i. e., two-thirds of the hereditary estate, with such other relief as to her may appertain.

"The said complaint was demurred to for lack of facts sufficient to constitute a cause of action and answered by defendant Luis Magín, who also pleaded new matter of defense as follows:

"That plaintiff Isidra González Ramos is not and never has been acknowledged as a natural daughter of José María González and Gregoria Ramos Fonseca in an authentic document, either by them or by their heirs; that she has not been so acknowledged by the judgment of any jurisdictional court either before or after their marriage, and that the said plaintiff was not named as an heir in the will left by José María González nor has she been adjudged to be such by any competent court.

"As the facts set up in the said defense are the same as those pointed out as grounds for the demurrer, these pleadings will be considered jointly.

"Inasmuch as the plaintiff was born on May 15, 1899, the Spanish Civil Code of 1888, which was extended to Porto Rico in 1899, or prior to the adoption of the Revised Civil Code, is applicable to this case.

"According to section 121 of the former code, a child shall be

considered as legitimated by a subsequent marriage only when it has been acknowledged by the parents before or after the celebration thereof. And under section 131 of the said code a natural child may be acknowledged in the record of birth, by will, or by any other public instrument.

"If the pleadings and evidence be considered in the light of the said statutes, the first question to be determined is whether or not plaintiff Isidra González Ramos was duly acknowledged by her parents, especially by José María González, and for that reason has the status of an acknowledged natural daughter.

"In the case of *Amsterdam et al.* v. *Puente et al.*, 16 P.R.R. 527, the Supreme Court of Porto Rico, in determining the scope of section 131 of the Spanish Civil Code, said:

" 'We think it is a fair deduction from the provisions of the Civil Code, heretofore in existence, as well as the practice and jurisprudence in this regard that, without some authentic act which reveals the will of the father to give the child a status, the child has only a right of action to compel the father to confer such status. Section 135 of the Spanish Civil Code and section 189 of the Porto Rican Civil Code provide for the cases when a father is compelled to acknowledge his illegitimate child. He can be compelled by an action, and the necessity for such action can only be said to be dispensed with when there are some solemn acts on the part of the father, which show that this obligation has already been performed. It is the plain inference from these sections that although a father may have done, as in the case before us, any number of acts to show that a particular person was his child, yet he cannot be said to have acknowledged him according to the legal use of the word "acknowledgment." If he may be compelled then before such compulsion the *desideratum* has not been attained. Until there is some solemn act or some declaration on the part of a court a child cannot be said to have acquired the civil status of an acknowledged natural child. In the case under consideration there was no satisfactory evidence of any intention on the part of the father to acknowledge his natural children with all its legal effects.'

"Applying that reasoning to the present case, it will be seen that the evidence does not support the plaintiff's alleged acknowledgment.

"The proceeding brought in this court is an *ex parte* remedy whose purpose was to secure registration of the birth of the plaintiff in the civil register, and in such a proceeding, because of its special nature, questions affecting the filiation of the petitioner should not

be raised and can not be considered, for it is the sole province of the court to order the corresponding registration on the showing of a clear and established right. To adopt a contrary opinion would be to hold that by means of an *ex parte* proceeding, without hearing the adversely interested parties, the same · result could be obtained as in an action of filiation, which would be entirely repugnant to the good principles of equity and justice by which our system of laws is inspired.

"In *Puente et al.* v. *Puente et al.*, 16 P.R.R. 556, it was said:

" '. . . . It has been the constant practice that when a father fails or declines to make the acknowledgment, that the son must have recourse to a court of competent jurisdiction and exercise an action for filiation, to secure a judgment of the court declaring what the father failed or declined to declare. This proceeding, from its nature, is "contentious," and the parties thereto in addition to the son, are the father or his heirs and successors in interest.'

"On the other hand, the acts of acknowledgment performed by the father and appearing from the evidence in this case are in no manner sufficient to prove the fact of the acknowledgment of the plaintiff. They alone might give the plaintiff the right to maintain an action of filiation, but never the right of an acknowledged natural child until that status be established by a jurisdictional court by means of an opportune judgment in the corresponding plenary action.

"In *Puente et al.* v. *Puente et al.*, *supra*, the Supreme Court said:

" 'In order for the appellant, in this case, to have successfully alleged her condition of an acknowledged natural daughter, and make opposition as such, and as such be declared an heir, it was necessary that her acknowledgment should be clearly shown to have been made by the father in a voluntary and formal manner, or that if she had the right to be acknowledged under the law and the father failed to make the formal acknowledgment or declined to do so, that she had obtained a final judgment in her favor from a court of competent jurisdiction and under the proper "contentious" proceeding.

" ' ' "The condition of a natural child must necessarily be based on the acknowledgment by the father, voluntarily and legally established, or in the event of failure or refusal, in a formal final judgment to that effect. (Decision of the Supreme Court of Spain of April 16, 1864.) ".

" ' ' "The filiation of natural children must necessarily be shown

by the acknowledgment of their parents or by the formal declaration of a final decision, a mere certificate of baptism not being sufficient to establish it. (Decision of the Supreme Court of Spain of June 28, 1864.)''

'''Article 131 of the Spanish Civil Code, which was extended to Porto Rico in 1889, provides that the acknowledgment of a natural child shall be made in the record of birth, by will, or by any other public instrument. When the acknowledgment has been made by the father in one of the forms prescribed, then it is not necessary to have recourse to the courts, because his status is perfectly established.

'''Article 135 of the Spanish Civil Code determines when the father is obliged to acknowledge a natural child, namely, when an indisputable document written by him, expressly acknowledging his paternity, is in existence, or when the child is in uninterrupted enjoyment of the status of a natural child of the defendant father, justified by direct acts of the said father or of his family. (With respect to the mother, see article 136.) And in such cases when the father does not agree to make the acknowledgment in the manner prescribed in article 131, it is necessary to have recourse to the court of competent jurisdiction and exercise an action to secure the acknowledgment, the time within which such an action must be brought being fixed by article 137 of the said Spanish Civil Code.'

''The second question raised by the parties referring to the plaintiff's status as an heir is disposed of by the foregoing considerations in the sense that as she has not the status of an acknowledged natural child, she has no right to legitimation and to the status as an heir of her deceased father, José María González.

''On the other hand, it can not be held that this is an action for acknowledgment or of filiation. It is a proceeding for the annulment of a partition and declaration of heirship on the ground that the plaintiff was legitimated by the marriage of her parents. It would be highly improper for this court in such a proceeding to consider the acknowledgment and filiation of the plaintiff for which the law requires a clear and defined action adequate for that purpose and subject to the requisites and terms of prescription established for such an action in distinct provisions of the Civil Code.

''This court is of the opinion therefore that as the plaintiff was not acknowledged by her father in an authentic manner in the record of her birth, in his will, or in any other public document, and that no court of competent jurisdiction has adjudged her filiation, she

lacks the condition of an acknowledged natural child which is a prerequisite to her legitimation by the subsequent marriage of her parents and therefore that she does not enjoy the status of an heir of José María González.

"Judgment will be entered in conformity with this opinion, dismissing the complaint, without special imposition of costs."

In her brief the appellant assigns the following errors:

"1. The court erred in not rendering judgment on the pleadings due to the fact that the defendants raised no issue and their so-called new matter, liberally construed, was only a denial of some facts alleged in the complaint.

"2. The court erred in admitting in evidence for the defendants the record of case No. 5125 of the District Court of Guayama, because it was entirely impertinent.

"3. The court erred in admitting in evidence a supposed certificate of the birth of the plaintiff offered by the defendants.

"4. The court's judgment is contrary to law, it having erroneously construed the law in regard to acknowledgment before legitimation.

"5. The court erred in dismissing the complaint in whole, for admitting hypothetically that the plaintiff was not legitimated by the subsequent marriage as alleged, the court could have adjudged her to be an acknowledged natural daughter with a right to a portion of the estate left by her father."

The appellant prayed in the lower court for a judgment on the pleadings on the ground that the answer joined issue on no material fact set up in the complaint and that as the complaint was verified, a specific denial of each of its averments was necessary. The appellant's contention rests principally on the assertion that the new matter set up in the answer directly or tacitly admitted the allegations of the complaint.

Referring to new matter of defense the following is said in 2 Estee's, p. 568:

"New matter. Under the Code, there are only two classes of defenses allowed. The first consists of a simple denial; and the

second, of the allegation of new affirmative matter; and as the Code has abolished all distinctions in the forms of action, and requires only a simple statement of the facts constituting the cause of action or defense, these two classes of defense must be the same in all cases. New matter is where defendant seeks to introduce into the case a defense not disclosed by the pleadings; something relied upon by him, but not put in issue by the plaintiff, and is such as defendant must affirmatively establish. Such matter must be specially pleaded. The Code makes no difference in the classes of new matter, for whatever admits, either directly or by way of necessary implication, that a cause of action as stated in the complaint once existed, but at the same time avoids it and shows that it has ceased to exist, is new matter."

The material allegation of the complaint to establish the legitimation of the appellant by subsequent marriage is the previous acknowledgment as a natural child, alleged to have been made by the parents, for the purpose of determining her hereditary rights, and therefore it is alleged that the acknowledgment was made in the baptismal record and that later, in order to secure her registration in the civil register as a legitimated child of the deceased José María González and Gregoria Ramos Fonseca, the appellant brought a proceeding in the District Court of Guayama and recovered judgment ordering her registration. It is alleged in the new matter that the appellant is not and has not been acknowledged as the natural child of José María González in any authentic document, by him or by his heirs; that she has not been adjudged to be such by any proper court, and that she was not named as heir in the will of the deceased. These allegations comprising the new matter of defense comply with the statutes and the jurisprudence. It is true that they do not deny the existence of the baptismal record and the judgment rendered by the District Court of Guayama, but their efficacy is not admitted by alleging that the acknowledgment of the appellant has not been made in an authentic document, or by any court of competent jurisdiction. The first assignment is, therefore, without merit.

In the second assignment the appellant attacks the admission in evidence of the record of case No. 5125 brought in the District Court of Guayama, wherein, at her instance, judgment was rendered ordering her registration in the civil register of Arroyo as the legitimated daughter of José María González and Gregoria Ramos Fonseca. The objection of the appellant is that the said record proves no allegation of the new matter of defense.

Section 126 of the Code of Civil Procedure reads as follows:

"In pleading a judgment, or other determination of a court, officer, or board, it is not necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been duly given or made. If such allegation be controverted, the party pleading must establish on the trial the facts conferring jurisdiction."

The appellant pleaded the judgment ordering her registration in the civil register in the manner shown by the allegations of the complaint, but was silent regarding the facts that determined the jurisdiction of the court, and the defendants denied that it had jurisdiction. The burden of proof was therefore on the appellant. In the absence of evidence to that effect her allegation would have been valueless, but the defendant chose to present the said record tending to prove that the court had no jurisdiction to render the said judgment and the lower court committed no error in admitting it in evidence.

The appellant does not argue the third assignment; therefore, we shall pass on to a joint consideration of the fourth and fifth assignments in which the merits of the case are discussed.

We are in accord with the analysis made by the lower court of the law and jurisprudence in their application to the pleadings and the evidence in this case. However, it is

necessary to make a more concrete discussion of certain points. In view of the fact that the appellant was born on May 15, 1899, her case is governed by the provisions of the Spanish Civil Code. Only natural children can be legitimated by subsequent marriage, but as they must have been acknowledged in order to be considered as such, acknowledgment before or after the marriage by the parents is a condition precedent to the full legal effect of their legitimation. The relief prayed for in the action brought by the appellant was that the partition of the hereditary estate wherein her interest had been disregarded be declared void and that she be adjudged an heir of the deceased José María González. Her fundamental allegation is her status as an acknowledged natural child legitimated by subsequent marriage, there being the requisite of the previous acknowledgment made by the parents in the baptismal record and also by virtue of the judgment ordering her registration in the civil register, stating in the record her status as an acknowledged natural child legitimated by subsequent marriage. If either of these two elements could have been given legal force, the appellant would have attained her purpose. But the baptismal record, which appears to have been made on April 2, 1902, while the civil register had been in operation since 1884, could not be considered as positive proof of the acknowledgment. In the case of *Rodríguez* v. *Rodríguez et al.,* 18 P.R.R. 428, wherein the legal effect of this kind of evidence was determined, it was said:

"Certificates of baptism and marriage, as all public documents in general, certify to the act which led to their execution, namely. the administration of the baptism and the celebration of the marriage on the dates stated; but they do not certify to the truth of the statements contained in them with respect to the filiation or civil status of the person baptized or married. Such is the legal doctrine found in the decisions of the Supreme Court of Spain of June 28, 1864, March 18, 1873, June 24, 1897, and July 13, 1899, which doctrine conforms to the provisions of section 1186 of the Civil Code in force."

And of no greater legal effect is the judgment ordering the registration of the appellant in the civil register as an acknowledged natural child legitimated by the subsequent marriage of José María González and Gregoria Ramos Fonseca. By the simple mention of the judgment the complaint established *prima facie* the lawful acknowledgment of the appellant, but upon investigation it was found that the judgment was rendered in an *ex parte* proceeding prosecuted in the absence of the other really interested parties and that, therefore, the judgment of the District Court of Guayama was void because it had no jurisdiction. No other evidence was produced to establish the authentic acknowledgment of the appellant, but her attorney, doubting the probative force of the baptismal record and judgment referred to in the complaint, raised the question in his brief in the following manner:

"In drafting our pleading we set up in the second count acts that tended to show an acknowledgment by the parents of the plaintiff so that the court might be in a position to define the acknowledgment of the plaintiff as a condition precedent to her legitimation on the basis of the possession of that status, on the hypothesis that the proceeding brought for her legitimation may not have been sufficient in law.

"The court did not decide that question, but, as we have seen, the acknowledgment not having been made according to section 131, the lower court rendered judgment for the defendant on that point alone."

And his argument in support of that proposition is as follows:

"The legitimation of children is a status resulting from the marriage of two persons who lived in concubinage and had natural children whom they acknowledged by a series of acts and facts in accordance with the requirements of the code, and the marriage operated to produce their legitimation, whether the acknowledgment be voluntary or compulsive."

The point so raised is very important and should be

considered in connection with sections 115, 116, 117, 121, 135 and 136 of the Spanish Civil Code, which read as follows:

"Art. 115.—The filiation of legitimate children is proven by the record of the birth, entered in the civil registry, or by an authentic instrument, or a final judgment in the cases referred to in articles 110 to 113 of the preceding chapter.

"Art. 116.—In the absence of the documents mentioned in the preceding article, filiation shall be proven by the uninterrupted enjoyment of the status of a legitimate child.

"Art. 117.—In the absence of the record of birth, authentic document, final sentence, or enjoyment of status, legitimate filiation may be proven by any means, provided there is a foundation of proof in writing coming from both parents, either jointly or severally.

"Art. 121.—Children shall only be considered as legitimized by a subsequent marriage, when they have been acknowledged by the parents before or after the celebration thereof.

"Art. 135.—The father is obliged to acknowledge the natural child in the following cases:

"1. When an indisputable paper written by him, expressly acknowledging his paternity, is in existence.

"2. When the child is in uninterrupted enjoyment of the status of a natural child of the defendant father, justified by direct acts of the said father or of his family.

"In cases of violation, ravishment, or rape, the provisions of the penal code shall be observed with regard to the acknowledgment of the issue.

"Art. 136.—The mother is obliged to recognize the natural child:

"1. When the child is, with regard to the mother, included in any of the cases stated in the preceding article.

"2. When the fact of the birth and the identity of the child are duly proven."

The question raised by the learned attorney for the appellant has been commented on to some extent by Manresa, who points out the signification to which a literal tenor of section 121 may lead, attempting to harmonize it with the other sections that we have quoted. His language is as follows:

"The literal tenor of this section raises a presumption that if there are several natural children only those individually acknowledged by their parents may be considered as legitimated by sub-

sequent marriage, and that perhaps would produce an unjust discrimination among them, if all of them had not been acknowledged. It can not be believed that the compilers of the code intended to promote this result and it is necessary to consider carefully the doubt in connection with other elements of construction different from the wording of the section.

"There was a similar provision (section 119) in the bill of 1851 and Goyena explained it as follows: 'Until now subsequent marriage conferred full right of legitimation for the reason that as natural paternity could be investigated, the child could prove it even after the marriage and in spite of the objection of the parents. At present, under section 127, even investigation of maternity is prohibited, and there can be no natural child without previous voluntary acknowledgment.'

"If that is true, as it seems to be in many foreign codes that also exact the same condition, the only reason for adopting such a provision has now no value, inasmuch as our code allows investigation of maternity, and in fact evidence may also be produced to show paternity.

   *      *      *      *      *      *      *

"It is a fact that in accordance with sections 135 and 136, when parents unjustly neglect to acknowledge their children these may oblige them to do so; but as regards the father (except in cases of rape, ravishment or abduction) what is prayed for and actually may be obtained is the legal force of a previous voluntary acknowledgment, the advantage of the unacknowledged child is lessened, and the defenselessness will be absolute when there is no document or possession of status referred to in paragraphs 1 and 2 of section 135.

"As far, then, as a natural child is concerned, we are of the opinion that when one has not been acknowledged as such he should be considered as legitimated by the mere legitimation of his brother or sister, if he can show that he is a natural child according to law by any of the means by which legitimate children may prove that they are so referred to in sections 115 and 116 and specially by the means provided in section 117. Although this would allow a free investigation of paternity, all natural children would be treated alike and therefore a complete remedy afforded." 1 Manresa Cod. Civ. 543–45.

Notwithstanding Manresa's suggestions for avoiding unjust discriminations when there are several children and all

of them have not been acknowledged, or for supplying omissions by unjust neglect, the appellant has not brought forward the necessary elements as a means of considering such suggestions in their different aspects. The questions so raised are open for the future. The appellant based her action only on the authentic acknowledgment defined in section 131. She did not extend the issue to any of the cases referred to in section 135.

That this is so appears clearly from the discussion contained in the first assignment regarding the sufficiency of the new matter, wherein the appellant said:

"Is this an action of filiation wherein perhaps this question could be raised, or an action wherein a legitimated child is claiming its portion of an estate?"

But even granting that this was said by way of argument only, the fact is that the complaint does not set up facts whose performance by a putative father would entitle a natural child to bring an action for acknowledgment.

For all of the foregoing reasons the judgment appealed from should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Hutchison dissented.